## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                            Case No. 23-CR-20676

vs.

                            Hon. Thomas L. Ludington

D-3 ADAM BALL,

     Defendant.

_____/

## DEFENDANT'S SENTENCE MEMO
## AND REQUEST FOR VARIANCE

*"**Our sentences are too long, our sentences are too severe, our sentences are too harsh . . . there is no compassion in the system. There's no mercy in the system.**"[1]*

*"**Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increase in prison terms. . .**"[2]*

---

[1] Testimony of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse), *video link* accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007)

[2] August 9, 2003 Speech of Justice Kennedy at the ABA Annual Meeting (available at http://www.abanow.org/2003/08/speech-by-justice-anthony-kennedy-at-aba-annual-meeting/)

## BACKGROUND

The Defendant, Adam Ball, stands before this Honorable Court because he committed a crime. He understands that, and the need for punishment. Mr. Ball files the present Sentence Memo and Motion for Variance, seeking a sentence below the advisory sentencing guidelines. Such a sentence reflects the nature and circumstances of Mr. Ball's offense, his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

Mr. Ball is a defendant who has lived a lifetime of positive accomplishments and contributions to society. Above all else, that is Mr. Ball's legacy and standing in the community – he is a good man.  Yes, most defendants that appear before this Court at sentencing say, "I am a good person, this is not me," in some way. But in Mr. Ball's Case, these are much more than words – they are an emphatic reflection of a lifetime of good works and positive deeds.

Mr. Ball is a dedicated family man, with a loving and supportive family, wife, and three teenage kids. He has an exemplary work and education record, having graduated college with honors, and worked long, hard hours his entire adult life. Mr. Ball has a strong religious faith, is active in his church and his local community, and as reflected in multiple letters of support, enjoins the strong support of both family and friends. He is a true first-time offender, with no prior criminal history – even for

arrests.  He has lived an entirely responsible life into middle age, working hard, and helping to support his family, and is therefore less of a danger to the community, and less likely to re-offend. Finally, Mr. Ball has made full restitution and paid a significant forfeiture judgment, and this commitment to making whole any possible financial consequences of this offense, making repayment and satisfying the wrong Mr. Ball committed, makes him less of a danger to the public, less likely to reoffend, and satisfies the need for punishment and deterrence for this white-collar offender who committed a non-violent crime.

## SENTENCE ARGUMENT

## INTRODUCTION

The fundamental principle of sentencing is the directive of Congress that the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." 18 U.S.C. § 3553(a); *Dean v. United States*, 581 U.S. 62, 67, 137 S.Ct. 1170, 1175 (2017). Further, there is an emphasis on the need for individualized sentencing, and "the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S.

476, 487, 131 S.Ct. 1229, 1240 (2011), (*quoting Williams v. New York*, 337 U.S. 241, 247 (1949)).[3]

Importantly, a district court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 39 (2007).[4] In addition, the guidelines "do not constrain the discretion [of the district court] to impose a sentence within statutory limits," *Beckles v. Unites States*, 580 U.S. 256, 137 S.Ct. 886 (2017). In fact, a district court may impose a below guideline sentence simply because it disagrees with the policy decisions underlying a specific guideline. *See Peugh v. United States,* 569 U.S. 530, 552, 133 S.Ct. 2072, 2089 (2013) (Thomas J., dissenting. "A district court may freely depart from the range recommended by the Guidelines based not only on "an individualized determination that [the Guidelines] yield an excessive sentence in a particular case," but also based on "policy disagreement" with the Guidelines themselves.'")

---

3 *See also, Miller v. Alabama*, 567 U.S. 460, 470 (2012) ("punishment for crime should be graduated and proportioned to both the offender and the offense").

4 S*ee also Nelson v. United States*, 129 S.Ct. 890, 891 (2009) (*per curiam*) (guidelines are "not to be presumed reasonable."); *Peugh v. United States*, 569 U..S. 530, 133 S.Ct. 2072, 2080 (2013) ("The court may not presume that the Guidelines range is reasonable"). *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (guidelines not presumed reasonable).

When one applies that principle to the case of Adam Ball, the inexplicable conclusion is that a sentence of probation, with no term of incarceration, is sufficient without being greater than necessary to accomplish the societal goals of sentencing found in § 3553(a).

**A.     Mr. Ball' extraordinary family situation and responsibilities favor a probationary sentence. [3553(a)(1) factors – history and characteristics of the defendant]**

Mr. Ball has extraordinary family responsibilities that merit this Court sentencing him to probation instead of imprisonment.

In the Case at Bar, and as noted in the PSR, Mr. Ball is an exemplary family person, with a loving and supportive family – parents, siblings, wife, and children. He married his wife Sarah (nee Matuzak) in 2008, who described him to the probation officer as "A family orientated individual who works hard to provide for his family and also assists an elderly neighbor." She further went on to state that he "strives to be a role model for their children and actively supports their participation in sports."[5]

The couple has three children, a son (age 15) and two daughters (ages 13 and 11). Mr. Ball is actively involved in the raising of his children, providing emotional

---

5 *See also,* letter of support by Sarah Ball, attached as part of the Appendix to this Memorandum.

support and guidance, and coaching the daughters in softball. Being teenagers, the children are at a particularly important age, where they need the advice, guidance, and steady hand of their father.[6] If Mr. Ball were to be imprisoned to any term of confinement, his three teenagers would have their critically important middle school/high school years turned upside down. The two young daughters in particular would be severely jeopardized without their dad in their everyday lives.

Importantly, Mr. Ball is the only child of his parents who currently resides in the area.[7] Therefore, while they are currently in good health for their age, they are elderly, and responsibility for caring for them as they age will fall primarily on him – an obligation that he will gladly accept and perform for his parents.

Mr. Ball has a strong religious faith, and is active in his church, the Good Shepherd Lutheran Church in Saginaw, having served in "various leadership positions,"[8] such as being an Elder and an Usher.[9] He is described as a "valuable and

---

6 *See* letter of support by his son I.B., attached as part of the Appendix to this Memorandum.

7 *See* letter of support by Ben Ball, the Defendant's brother, attached as part of the Appendix to this Memorandum.

8 *See* letter of support by Rev. Dr. Paul Biber, the Defendant's Pastor, attached as part of the Appendix to this Memorandum.

9 *See* letter of support by Steven Ottarski, attached as part of the Appendix to this Memorandum.

respected member of our congregation," and a person who "continued to contribute to our community as a hard worker, community member, and most importantly as a father and husband."[10] Even after the investigation and prosecution of this Case began, Mr. Ball "continued to be a faithful servant in our congregation over the last six years of this legal process, even going so far as to limit his leadership responsibilities so that he would not lead anyone to question the congregations work because of his position."[11]

He is likewise a valuable member of his community – exemplified by his coaching a boys basketball team at a local alternative school.[12] He does not do drugs, and only drinks alcohol socially on occasion.

Mr. Ball graduated from high school in 1995, and initially attended Saginaw State University for 2.5 years. He then transferred to the University of Michigan, where he completed his bachelor's degree in civil and environmental engineering, with a 3.99 grade point average.

---

10 *See* letter of support by Rev. Dr. Paul Biber, the Defendant's Pastor, attached as part of the Appendix to this Memorandum.

11 *Id.*

12 *See* letter of support by Dennis Borchard, managing Director of the Saginaw County Road Commission, attached as part of the Appendix to this Memorandum.

After graduating from the University of Michigan, he worked as an engineer for Spicer group for three years. Following that, he worked for the Saginaw Road Commission for six years. Then, in 2009, Mr. Ball was hired by surveying Solutions Inc (or SSI), where he has remained working as an engineer to the present day.[13] His career, both with the Saginaw Road Commission, and then later with SSI, has been a decades long commitment to serving the people of the state of Michigan, and their public infrastructure and transportation. His positive contributions to the community through his work at SSI can best be summarized by Dennis Borchard, managing Director of the Saginaw County Road Commission, who notes that in a professional setting:

> Adam displayed outstanding leadership and an exceptional ability to communicate complex engineering concepts in a clear and respectful way to both staff and foreman. His leadership and technical skill were consistently evident, and it was no surprise when new opportunities came his way after successful years in that role.[14]

---

13 *See* letter of support by Todd Bonzelet, an officer and member of the board of directors of SSI, attached as part of the Appendix to this Memorandum.

14 *See* letter of support by Dennis Borchard, managing Director of the Saginaw County Road Commission, attached as part of the Appendix to this Memorandum.

Mr. Borchard went on to conclude that, "Adam is a good man – a devoted husband, father, and friend. He has always shown integrity, compassion, and respect toward others. I believe in his character, and I will always consider him a true friend."[15]

Todd Bonzelet, an officer and member of the board of directors for SSI, explains that Mr. Ball is a "thoughtful, caring, compassionate and personable," coworker and friend.[16] He goes on to add that "because of my knowledge of his personal character and thoughtful nature, I know that Adam Ball is truly repentant about what has transpired, and he wishes to remain a contributing member of society for the benefit of his family and Coworkers."[17]

Even a short term of imprisonment would likely result in Mr. Ball losing his job, devastating his family.[18]

A court can depart downward from the guidelines based on "family circumstances" or "family ties and responsibilities." *United States v. Husein*, 478 F.3d 318, 329-30 (6th Cir. 2007) (internal citations omitted). These circumstances

---

15 *Id.*

16  *See* letter of support by Todd Bonzelet, an officer and member of the board of directors of SSI, attached as part of the Appendix to this Memorandum.

17 *Id.*

18 *See* letter of support by Steven Ottarski, attached as part of the Appendix to this Memorandum.

must be "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* at 326 (quoting *Koon*, 518 U.S. at 96).

In *Husein*, the defendant pled guilty to helping to sell ecstasy near her home. *Id.* at 322. Her father, due to several medical conditions, was "paralyzed on his right side, unable to use the restroom without assistance, unable to walk, barely able to talk . . . [and needs] to be fed via a feeding tube attached to his stomach." *Id.* at 322-23 (quoting the trial court). The defendant and her mother "provide for all of the family's financial and other needs" and they "alternate working shifts at a factory to insure that an adult is always home to attend to [the defendant's father] and the [defendant's] minor" siblings." *Id.* at 323 (quoting the trial court). Further, her income was used to pay for all the household expenses including the home mortgage. *Id.* (quoting the trial court). The appellate court concluded that the downward departure of one day in prison and 270 days home confinement was reasonable, because district judge properly determined that defendant's family would "benefit more by [defendant's] presence than society is going to benefit from [her] incarceration."[19]

---

19 *See also, United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (with guidelines of 27 – 33 months, a below guideline sentence of probation with one year house arrest was reasonable where defendant pled guilty to possession of unregistered firearm arising from altercation with wife during which gun accidentally discharged, in part

Similarly, the societal goals of § 3553(a) are better served by permitting the Ball family to benefit from his presence, love, and support (both financial and emotional), than by sentencing Mr. Ball to incarceration within the guidelines.

In *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), the Ninth Circuit found the district court's sua sponte variance to probation was not unreasonable in a possession of child pornography case with guidelines of 41 – 51 months, in part because of his positive characteristics "such as his having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitude, his motivation and intelligence, and he support of his wife and child," reasoning that "[t]hese characteristics 'undoubtedly constitute 'history and characteristic of the defendant' that justify a variance below the guidelines.'"[20]

In *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007), the Fourth Circuit affirmed the district court's downward variance in part because defendant "is a good parent" which is a "valid consideration under § 3553(a)"). In *United States v. Fuson*, (6th Cir. Feb. 8, 2007) (*unpub*) 2007 WL 414265, the Sixth Circuit held that a sentence of probation and six months home confinement was reasonable for a

---

because incarceration not necessary to protect the public).

20 *See also, United States v. Manafort*, *unpublished*, 18-cr-00083-TSE-1 (E.D Va., March 7, 2019) (Where defendant convicted of tax evasion and bank fraud and guidelines 15 to 25 years, departure to 48 months warranted in part because of "otherwise blameless life.")

defendant convicted of felon in possession of firearm with guidelines 24-30 months, in part because defendant's wife bought the antique not for any criminal purpose and client's record since relatively minor felony conviction was unblemished for the past seven years and client's "working and supporting his family [although a disfavored factor under the guidelines] was entitled to some weight".

Ultimately, a sentence of any time in custody would take a husband away from his wife, a father away from three children, a son and caregiver away from aging/elderly parents, and throw an entire family into chaos.[21] Sentencing decisions should not only foster respect for the law by punishing an offender for having broken it, but also seek to avoid the possible deleterious effects on innocent children which can result from "transferred punishment" on them. In *U.S. v. Lehmann,* 513 F.3d 805 (8th Cir. 2008), a "felon in possession" defendant with a calculated guidelines range of 37 – 46 months, had her request for a downward departure of variance granted, the district court sentencing him to probation with 6 months in half-way house. The sentence was upheld because of the devastating effect the mother's imprisonment would have on her 8-year-old son.[22]

---

[21] *See also,* letter of support by Sarah Ball, and his son his son I.B., both attached as part of the Appendix to this Memorandum.

[22] *See also, U.S. v. Chambers,* 855 F.Supp 12, 14 (D.D.C. 1995) (defendant, a single mother with two children ages 12 and 15, should not be incarcerated for 15 years, as this would deprive the children of "supportive and loving parents to avoid the perils

Therefore, this Court should sentence him to probation, due to Mr. Ball's extraordinary family circumstances.

**B.**     **This Honorable Court should grant Mr. Ball a variance because of a complete lack of a criminal record, and this is his first arrest and conviction. [3553(a)(1) factors – history and characteristics of the defendant].**

Mr. Ball is a true first-time offender, with no prior criminal history – even for arrests.  He has lived an entirely responsible life into middle age, working hard, and helping to support his family. As discussed in the previous section of this memorandum, *supra*, Mr. Ball has graduated high school, completed college with honors, and has had steady and consistent employment his entire adult life, marrying, having children, raising a family, owing home/property, and being a productive member of his family and the community.

Mr. Ball enjoins the strong support of both family and friends,[23] who all serve as an unwavering support network, and his being charged with an offense such as that in the Present Case certainly represents aberrant behavior. The attached letters paint the picture of an extraordinary individual – loyal, devoted, and successful. He

---

of life [, and this would] without question… [cause needless suffering of young innocent children, [which would] not promote the ends of justice").

23 *See* the **several** letters of support, attached as part of the Appendix to this Memorandum.

clearly understands the seriousness of the offense, has shown great remorse, and sincere acceptance of responsibility with his acts since being charged in this Case.

While a lack of criminal history is de facto taken into account (to some extent) by the guidelines, there is a significant difference between a person with a criminal history category of I, and a person (such as Mr. Ball) with no prior arrests or convictions at all.

To start with, passage of the zero-point offender provision shows that the sentencing Commission recognizes the importance and value of a person who truly has no prior criminal record. While Mr. Ball has certainly been given credit as a zero-point offender, the arguments contained in this section of the Memorandum are also applicable as § 3553(a) factors.

This is not without precedent. 28 U.S.C. § 994(j) charges the Sentencing Commission with "insur[ing] that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense[.]"

Caselaw also supports this conclusion. For instance, in *United States v. Paul*, 561 F.3d 970 (9th Cir. 2009), the Ninth Circuit found the district court's (within guideline) sentence of 15 months unreasonably high where the defendant was convicted of embezzlement, and had guidelines of 10 – 16 months, in part because

Paul was a first-time offender with no criminal record whatsoever. Further, *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), the Ninth Circuit found that a district court's *sua sponte* variance to probation in a child pornography case with guidelines of 41 – 51 months as not unreasonable, in part because defendant's first conviction "did not fully account for his complete lack of criminal history" because a defendant with minor criminal history still falls in criminal history category I.

Likewise, in *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008), the Tenth Circuit upheld a variance to 24 months in a child porn case with guidelines 78 - 97 months. The court reasoned that this was defendant's first conviction, and rejected the government's argument that the guidelines already considered this by placing defendant in criminal history category I:

> . . . although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of I...this is a not a departure case, it is a variance case.... and, after *Gall* and *Kimbrough*, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a).... Therefore, a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis.

In fact, the Sentencing Commission own research suggests that proper application of § 3553(a) in the case of a "true" first offender now strongly supports a below-guideline variance because of § 3553(a)(2)(C) and in § 3553(a)(6). As Professor Berman points out in his sentencing blog, these factors are only properly

acknowledged if and when a "true" first offender gets a lower sentence than the advisory range suggested for all the other persons with some criminal history that are lumped into Criminal History Category I. *See* Sentencing Commission's report, Recidivism and the "First Offender" (May 2004), available at http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf, which notes that:

> The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all.[24]

There is no evidence Mr. Ball ever previously engaged in any criminal behavior or activity whatsoever, let alone something as serious as the Present Charges. Therefore, this Honorable Court should grant a variance, and sentence Mr. Ball to probation.

---

24 *United States v. Duane*, 533 F.3d 441 (6th Cir. 2008) ([T]he district court did not respond to Duane's first argument — that he deserved a more lenient sentence because he had zero criminal history points. This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range. But the argument was not completely frivolous. Because Duane had zero points at age 57, he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree.");

**C.     Mr. Ball's age makes him less of a danger to the public, and less likely to re-offend when he is released from custody.   [§ 3553(a)(1) factors – history and characteristics of the defendant; and § 3553(a)(2) factors – to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes].**

As discussed in the previous sections of this Pleading, *supra*, Mr. Ball is a 48 year old, true first time offender, with zero previous criminal justice contacts.  His age before being arrested and convicted of his very first offense make Mr. Ball less of a danger to the community, and less likely to re-offend.[25] Therefore, this Court should grant his request for a variance, and sentence him to probation.

The likelihood that a defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 131 S.Ct. 1229, 1242 (2011).  USSG §5H1.1 was liberalized in 2010 to state that age "may be relevant" as to whether downward departure should be granted.

In *United States v. Smith*, (4th Cir. April 23, 2008), 2008 WL 1816564 (unpub.), the Fourth Circuit found that a sentence of 24 months was not an abuse of discretion in child porn case where the guidelines were 78 - 97 months, and where

---

25 *See Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines*, at 12, 28 (2004).

district court noted defendant was 64 years of age and had avoided violations of the law "up until this point in his life."[26]

As the Sixth Circuit noted in a bank robbery case, a district court sentencing a defendant to twice the advisory guideline range was unreasonable because the court did not consider that recidivism greatly decreases with age. *United States v. Payton*, 754 F.3d 375 (6th Cir. 2014). This was despite the defendant's long history of bank robberies. The Sixth Circuit wrote that the Sentencing Commission has observed that "[r]ecidivism rates decline relatively consistently as age increases." Further "[r]ecent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including Michigan) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age…. These statistics suggest that past fifty years old there is a significantly lower rate of recidivism."[27]

---

26 *See also, United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wisc. 2008) (in possession of child porn. case where guidelines 210-262 months, court imposes sentence of 72 months in part because he was 49 years of age and "had no prior record whatsoever" and "he had never before been to jail for even one day"); *United States v. Ward*, 814 F.Supp. 23 (E.D.Va. 1993) (departure warranted because guidelines fail to consider length of time defendant refrains from commission of first crime, here until age 49).

27 United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12 (2004) available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

"Both the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing.[28] *See also, United States v. Carter*, 538 F.3d 784 (7ᵗʰ Cir. 2008). *Cater* involved a 61 year old defendant convicted of money laundering and bank fraud with guidelines of 87 to 108 months. The district court sentenced him to 24 months, and the Seventh Circuit found that sentence to be reasonable, in part because defendant's age is relevant to risk of recidivism and "the likelihood of recidivism is a proper sentencing consideration. 18 U.S.C. § 3553(a)(2)(C)." They went on to explain that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed . . . to protect the public from further crimes of the defendant."

It is clear that a district court may properly consider a defendant's age as it relates to the possibility of her committing crimes in the future. *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming a below guidelines sentence where the district court's only reason for the variance was that the defendant's age made it unlikely that the defendant again would be involved in another violent crime. *See also*, *U.S. v. Ward*, 814 F. Supp. 23 (E.D. Va. 1993) (a departure was found to be

---

28 U.S.S.G. § 5H1.1; *U. S. v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009); ("observers of the criminal justice system have long acknowledged the "key" argument "that elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit.").

warranted for the reason that the guidelines fail to consider the length of time the defendant had refrained from commission of first crime, age 49).

**D.     Probation with Conditions is a Substantial Punishment, and a Legal Sentence in the Present Case.     [3553(a)(1) factor – history and characteristics of the offense and the defendant; and 3553(a)(2) factors – to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes].**

As noted in the Presentence Report, Mr. Ball's Guidelines as 24 to 30 months, for a violation of 18 U.S.C. § 371, which places him in Zone D.  While this equates to a guideline sentence of incarceration, the Court is authorized to sentence Mr. Ball to probation. 18 U.S.C.  § 3561(a). As further noted by the presentence report, probation can be imposed provided one of the following conditions of probation is included: a fine, restitution, or community service.[29] Indeed, strict conditions and supervision of probation, are more than sufficient deterrence and protection of the public, when added to the multiple very serious consequences already suffered by Mr. Ball: very public media attention associated with his arrest, conviction and sentence, a likely suspension of his license by LARA, very substantial financial penalties and restitution, and significant damage to his reputation and loss of community standing.

---

29 *See* Presentence Report, ¶ 90, p 22.

Under the facts of the Present Case, a sentence of incarceration is not required to satisfy the protection of the societal purpose of sentencing found in 3553(a)(2), as stated in 3553(a)(2)(C). Rather, probation is sufficient but not greater than necessary to satisfy both the adequate deterrence and protection of the public prongs of § 3553(a)(2).

**E.     Mr. Ball has made full restitution, and satisfied a large forfeiture judgment, which makes him less of a danger to the public, less likely to re-offend, and satisfies the need for punishment and deterrence. [3553(a)(1) factors – history and characteristics of the defendant; and 3553(a)(2) factors – to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes].**

Prior to sentencing, Mr. Ball has made full restitution of $914,360.00, and a significant forfeiture judgment of $814,640.00. In fact, as stated by counsel for Jeffrey Bartlett, "[i]n total, by the time of sentencing, the government will have collected financial penalties and restitution from SSI and the individual defendants of $15,630,943.93."[30]

---

30 *See* Defendant Jeffrey Bartlett Sentencing Memo and Request for Downward Variance,   ECF #306, p 3. As calculated by counsel for Mr. Bartlett, this "is calculated based on the following repayments to the government:

    Civil settlement with MDOT $3,564,031.54
    Backpay forewent by SSI $2,321,912.39
    Monetary Penalty for NPA $1,100,000.00
    Individual Defendant Payments $8,645,000.00"

These extraordinary efforts and commitment to making whole any possible financial consequences of this offense, making repayment and satisfying the wrong Mr. Ball committed, makes him less of a danger to the public, less likely to reoffend, and satisfies the need for punishment and deterrence for this white-collar offender who committed a non-violent crime.

In *United States v. Paul*, 561 F.3d 970 (9th Cir. 2009), the Circuit Court found that a district court's (within guideline) sentence of 15 months was unreasonably high, in part because defendant made full restitution. *See also*, *United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004) (In a 18 U.S.C. 371 conspiracy to defraud the United States case, payment of $280,000 restitution by defendants, a husband and wife, after they pled guilty to was extraordinary enough to remove case from heartland and justify downward departure from 24 months to probation and home detention).

**F.**    **This Court should sentence Mr. Ball below the advisory guideline range, because the sentencing guidelines and relevant conduct attributed to Mr. Ball overstate his criminal culpability. The proposed guideline range to too harsh a sentence that is greater than necessary to support the goals of sentencing under 18 U.S.C.A. § 3553(a).  [3553(a)(1) factor – history and characteristics of the offense and the defendant].**

Courts must fashion a sentence in a manner that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing criminal defendants.  18 U.S.C.A. § 3553(a). Quite simply, as applied in the Present Case, to Mr. Ball, the

guidelines "are far too severe."[31]

Sentencing emanates "from a law gone awry" and "massively heavy punishment cannot be justified in a civilized society . . . ." *United States v. Stockton*, 968 F.2d 715, 721 (8th Cir. 1992) (Bright, Senior Circuit J., *concurring*). A guideline sentence in the Present Case would result in an "utter travesty of justice" due to their "fetish with abstract arithmetic," and cause harm on "human beings if not cabined by common sense." *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006), *aff'd,* 301 F. App'x 93 (2d Cir. 2008).

"[S]entencing is a difficult art [and it] is easy to make it mechanical. . . .  It is, however, an act of reason as the judge looking at this particular person and the circumstances of the crime that this particular person has committed makes a judgment following the prescriptions of the statute." *United States v. Diaz-Argueta,* 447 F.3d 1167 (9th Cir. 2006).  In other words, "fashioning a just sentence cannot be reduced to a mere arithmetical exercise [and that] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of *judgment.*" *United States v. Biheiri.* 356 F. Supp. 2d 589 (E.D. Va. 2005).

---

31 Justice Anthony Kennedy, address to the Ninth Circuit Judicial Conference (July 9, 2006).

Furthermore, the fraud guideline (2B1.1), is not empirically based, and simply mandates a sentence that is greater than necessary to satisfy § 3553(a). The fraud guideline reflects "an ever more draconian approach to white collar crime, unsupported by any empirical data." *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012).[32]

Finally, much of the factual arguments advanced by the Government in other Sentence Pleadings filed in the Present Case rely on the legal premise that the guidelines for Mr. Ball (and the co-defendants) are calculated under a preponderance of the evidence standard, and not beyond a reasonable doubt.[33] When calculated by a preponderance standard, Mr. Ball's advisory guideline becomes far too high, particularly compared to guideline calculated by standard of beyond a reasonable doubt. *United States v. Gray*, 362 F. Supp. 2d 714, 723 (S.D. W. Va. 2005). As explained by the district court in *Gray*, when "determining what weight to give the

---

32 The judge in that case, Judge Rakoff, describes a "hypothetical but typical case described by Professor Kate Stith of Yale Law School, involving a typical securities fraud defendant" who in 1987 would have faced a guideline range of 30-37 months now faces a range of 151-188 months, a more than 500% increase. Judge Rakoff commented: "Was such a crime really 500% worse in 2003 than it was in 1987? Had any of the factors that underlie rational sentencing so radically changed as to warrant such a huge increase?"

33 *See* Government Sentencing Memo for defendant Andrew Semenchuk, ECF #303, p 13; Government Sentencing Memo for defendant Jeffrey Bartlett, ECF #305, p 13.

advisory guidelines, it may be helpful for the court to consider whether any guideline enhancements are supported by evidence beyond a reasonable doubt. This is not a back-door means of adopting the position of the remedial dissenters in Booker. Rather, it allows the court to give effect to both the merits and remedial majority opinions: federal sentencing is still judge-based, but courts should not impose sentences based on the sort of flimsy evidence that often passed under the old regime."[34]

Importantly, in April 2015, the Sentencing Commission amended Application Note 3(A)(ii) to § 2B1.1 to provide that "intended loss means the pecuniary harm that the defendant purposely sought to inflict."

This is particularly true in the Present Case, where the work did get done. However, despite the Governments protestations, not only did the work get done, and get done well, SSI was cheapest, thereby mitigating the loss amount. The Government argues that:

> The Court will no doubt hear Semenchuk and his co-defendants offer excuses, chief among those, "But we did the work and did it better than anyone else." There was nothing more important to the success of the conspiracy and scheme than the fact that SSI did the work and

---

34 *See also, United States v. Leroy*, 373 F.Supp.2d 887 (E.D. Wisc. 2005) (at n. 2, sentence of 70 months, rather than United States Sentencing Guideline of 100 to 125 months, was sufficient, but not greater than necessary, to serve purposes of sentencing. "Despite the applicability of a preponderance standard to guideline determinations, judges should still require a high degree of confidence in any finding that increases the sentence).

did it well. It tricked MDOT into awarding contracts based on lies and likely contributed to MDOT giving SSI the benefit of the doubt once questions arose.[35]

The flaw in this argument by the Government is that it is an incomplete reference to facts uncovered by their own investigation, by their own agents. As noted by counsel in the Sentence Memo filed for Mr. Semenchuk,[36] the "excuse" is **not** simply that they not only did the work, and did it better than anyone else. Rather, it is that SSI did the work, did it better than anyone else, **and** did it cheaply. In fact, as noted by counsel for Mr. Semenchuk, after the fraud was discovered, MDOT still wanted to work with SSI because of the quality **and** price of the work. Indeed, in as cited by counsel for Mr. Semenchuk, F.B.I. Special Agent Mitchell L. King authored a report stating, "[t]he posture of MDOT appears to be that SSI is cheap, they are the best at what they do, and there is a lot of work on the horizon."

So, Mr. Ball agrees and adopts the argument that "while the fraud committed by Mr. [Ball] certainly merits the instant conviction, the Court should also consider the significant mitigating factor of Mr. [Ball]'s simultaneous contribution to the increased quality and safety, and diminished cost, of highway construction surveying

---

35 *See* Government Sentencing Memo for defendant Andrew Semenchuk, ECF #303, p 18; *see also*, Government Sentencing Memo for defendant Jeffrey Bartlett, ECF #305, pp 18 – 19.

36 *See* Defendant Semenchuk Sentencing Memo and Motion for Variance,  ECF #304, p 5.

in the state of Michigan."[37] To emphasize, none of this is to suggest that Mr. Ball believes that a crime was committed, or that all his actions can be excused. On the contrary, Mr. Ball came clean and voluntarily agreed to speak with federal agents the very first day this investigation went public, with the execution of the search warrants in July 2019.

Further, contrary to allegation from the Government to the contrary, SSI, Mr. Ball's involvement with SSI, and his involvement in the conduct relating to the Present Case, did not begin with any intent to defraud. Rather, cutting corners and other initially minor conduct quickly spiraled out of control, putting the defendants in a position where they received more than they were otherwise entitled.

Finally, similarly to Mr. Semenchuk, Mr. Ball took a substantial step back from his involvement in the management and operation of SSI in October 2018, long before this investigation began with the F.B.I. raids in the Present Case, and became simply an hourly employee of SSI.

This Court can look to the example of *United States v. Redemann*, 295 F. Supp. 2d 887 (E.D. Wisc. 2003). There, in bank fraud case where guidelines were 18-24 months, for loss of 2.5 million, the district court departed downward in part because the loss significantly overstated seriousness of offense, finding "[u]nder application notes 8(b) and 11, the court may depart when the amount of loss

---

37 *Id.*

determined under § 2F1.1(b)(1) significantly overstates the seriousness of the defendant's offense. U.S.S.G. § 2F1.1 cmt. n. 8(b) & 11 (1998)."  The district court went on to note that, the "defendant submitted false invoices for work supposedly done on the bank, but *he did in fact do some valuable work for the bank which was not adequately recognized by the loss figure*).

The advisory guideline is too harsh and greater than necessary in this Case – it relies too heavily on the loss amount attributed to Mr. Ball, rather than his true role in the Case. Furthermore, the relevant conduct overstates Mr. Ball's role, as well as his criminal culpability.

The advisory guideline range applicable to Mr. Ball relies primarily on the loss amount attributed to him – that being more than $1,500,000, but less than $3,500,000. In fact, that loss amount alone, less 3 points for acceptance of responsibility, and two additional points under the zero point offender, is in essence the entire story behind the advisory guideline applied to Mr. Ball.  It virtually ignores the actual role Mr. Ball played in the alleged fraud scheme, as well as any connection with any of the factors in 3553(a). Even the guidelines note that, "[t]here may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense.  In such cases a downward departure may be warranted." U.S.S.G. § 2B1.1, App. Note 21 (C) (2018))

Thus, a starting offense level of 22 does not reflect his true culpability – Mr. Ball's relevant conduct, level of culpability, and role in the alleged fraud scheme are overstated when compared to the usual defendant in a fraud case with relevant conduct/a loss amount of between $1,500,000 and $3,500,000. Such a formalistic and mechanical application of loss amount, in this Case, is contrary to 3553(a), *Booker*, and recent sentencing jurisprudence.

This Court should look behind that formulistic range, at Mr. Ball and the "nature and circumstances of the offense," and "the history and characteristics of the offender." This is particularly true in the Present Case, involving Mr. Ball, a white collar offender accused of a non-violent offense. Indeed, it is far from rhetorical to question whether a lengthy term of incarceration is necessary for general deterrence in white collar cases. In *United States v. Adelson*, 441 F.Supp.2d 506 (SDNY 2006), the district court imposed a 42-month sentence in securities fraud case with guidelines of life, part because "there is a considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders.") In so ruling, the district court cited multiple sources, including Richard Frase, *Punishment Purposes*, 58 Stanford L. Rev. 67, 80 (2005); Elizabeth Szockyj, *Imprisoning White Collar Criminals?*, 23 S. Ill. U. L.J. 485, 492 (1998); and United States Sentencing Commission, Fifteen Years of Guidelines Sentencing 56 (2004). Further, quoting these sources, the district court noted that the Sentencing Guidelines

were written, in part, to "ensure a short but definite period of confinement for a larger proportion of these 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence," and "[m]oreover, the Government at no time here presented any evidence or cited to any studies indicating that a sentence of more than three-and-a-half years was necessary to achieve the retributive and general deterrence objectives applicable to a case like this one..." Section 3553(a) expressly dictates that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

In a prosecution such as the Present Case, incarceration of Mr. Ball is simply not necessary to protect the public, and is greater than necessary to meet the societal goals of 3553(a). *See, e.g., United States v. Edwards*, 595 F.3d 1004 (9th Cir. 2010), where, in a bankruptcy fraud conviction, with a guidelines range of 27 - 33 months, the Ninth Circuit held that a sentence of probation, seven months of house arrest, a $5,000 fine, and restitution of $100,000 not abuse of discretion, in part because "Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration." and citing legislative history: "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose."

This is particularly true when incarcerating Mr. Ball (and the co-defendants) would have a disastrous effect on community in the Standish area. SSI currently

employs close to 100 people, and incarcerating Mr. Ball and the other individuals that make SSI a successful surveying business would seriously threaten its viability.

There is ample support for this ground as a variance. In *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (*en banc*), the defendant convicted of tax evasion, and had guidelines 12 – 18 months. The Third Circuit found that the district court's sentence to probation, one year home detention, and fine of $250,000 was not unreasonable, in part because incarceration could threaten employment of 300 employees.[38]

A guideline sentence, or at the 21-month cap, does not comport with the statutorily imposed purposes of sentencing. A sentence of probation would be sufficient but not greater than necessary to satisfy the societal goals of sentencing. Therefore, this Court should grant a variance from the sentencing guidelines based on the harshness of the sentencing guidelines as applied in the Present Case.

---

[38] *See also, United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) (The high probability that business run by an antitrust offender would go under if her were incarcerated and the resulting hardship on 100 employees of those business justified downward departure of one level from 11 to 10 authorizing probation);  *United States v. Olbres*, 99 F.3d 28 (1st Cir. 1996) (guidelines do not prohibit departure on grounds that incarceration of defendant will cause job losses to his employees; case remanded to determine if extent of loss outside the heartland of such cases); *United States v. Kloda*, 133 F.Supp.2d 345 (S.D.N.Y. 2001) (in business tax fraud case, one-level departure granted in part because of "the needs of [defendant's] business and employees").

## **RELIEF**

WHEREFORE, Defendant asks this Honorable Court to sentence Mr. Ball to probation, with appropriate conditions, and no incarceration in the BOP.

Respectfully submitted,

/s/Mark A. Satawa
MARK A. SATAWA (P47021)
Attorney for Defendant Ball
26777 Central Park Blvd, Suite 300
Southfield, MI 48076
(248) 356-8320

DATED: November 13, 2025